NATIONAL AMERICAN INSURANCE COMPANY; Gulf Insurance Company, Plaintiffs–Appellants,

v.

RUPPERT LANDSCAPING COMPANY, INCORPORATED, Defendant–Appellee.

No. 98–1562.

United States Court of Appeals, Fourth Circuit.

Argued June 10, 1999.

Decided Aug. 6, 1999.

**ARGUED:** Neil Lawrence Henrichsen, Mitterhoff, Henrichsen & Stewart, P.L.L.C., Washington, D.C., for Appellants. Charles Thomas Brown, Silver & Brown, Fairfax, Virginia, for Appellee. **ON BRIEFS:** Dawn C. Stewart, Lorraine M. Magee, Mitterhoff, Henrichsen & Stewart, P.L.L.C., Washington, D.C., for Appellants. Glen H. Silver, Silver & Brown, Fairfax, Virginia, for Appellee.

Before WILKINSON, Chief Judge, and ERVIN and MICHAEL, Circuit Judges.

Affirmed by published opinion. Chief Judge WILKINSON wrote the opinion, in which Judge ERVIN and Judge MICHAEL joined.

## OPINION

WILKINSON, Chief Judge:

Two insurance companies seek to challenge the validity of an asset transfer between a now-bankrupt party and Ruppert Landscaping Company by suing Ruppert in district court. The district court granted summary judgment to Ruppert. Because standing to challenge the validity of the transfer rests with the trustee in bankruptcy, we affirm the judgment of the district court.

### I.

This case stems from the financial difficulties and ultimate bankruptcy of Green Thumb Enterprises (Green Thumb), which in the early 1990s was one of the largest landscaping companies in the Washington, D.C. metropolitan area. During the course of Green Thumb's operations, the National American Insurance Company and the Gulf Insurance Company (collectively Sureties) issued numerous payment and performance bonds on behalf of Green Thumb for various landscape installation and maintenance contracts.

In mid–1995, Green Thumb entered into a series of agreements with another landscaping company, Ruppert Landscaping Company (Ruppert). Most importantly for this case, Ruppert agreed to purchase a few of Green Thumb's notes from its primary lender and also to purchase some of Green Thumb's assets.

During the following months Green Thumb experienced financial difficulties and defaulted on landscape contracts that were bonded by the Sureties. In October 1995, the Sureties filed an involuntary bankruptcy petition against Green Thumb.

The bankruptcy ultimately became a Chapter 7 proceeding and a trustee was appointed.

In January 1996, Ruppert moved to lift the automatic stay pursuant to 11 U.S.C. § 362 in connection with its secured claims. The bankruptcy court granted Ruppert's motion. The Sureties then brought suit in district court challenging Ruppert's transactions with Green Thumb. The Sureties pursued a variety of counts: successor liability, tortious interference with contract, and statutory and common law conspiracy. The district court granted summary judgment to Ruppert finding that the Sureties lacked standing to bring these causes of action and that the Sureties' claims were barred by res judicata and collateral estoppel. The Sureties now appeal.

## II.

■ The Sureties argue that they have standing to bring their claims in district court. If a cause of action is part of the estate of the bankrupt then the trustee alone has standing to bring that claim. *See Steyr–Daimler–Puch of Am. Corp. v. Pappas,* 852 F.2d 132, 136 (4th Cir.1988). The Sureties assert that since their claims are not property of the estate, they can bring their claims directly against Ruppert in district court.

We disagree. The bankruptcy court noted that the trustee has a potential fraudulent conveyance action to challenge the legality of the transaction between Ruppert and Green Thumb. *See* 11 U.S.C. § 548. All of the Sureties' claims have this same focus. To make out their successor liability claim the Sureties rely heavily on exposing the Ruppert/Green Thumb transaction to be fraudulent in fact. *See Harris v. T.I., Inc.,* 243 Va. 63, 413 S.E.2d 605, 609 (1992). The Sureties' tortious interference with contract and conspiracy claims likewise depend on showing fraud or other unlawful action with regard to Ruppert's purchase of Green Thumb's assets. *See Chaves v. Johnson,* 230 Va.

112, 335 S.E.2d 97, 102 (1985) (tortious interference with contract); *Allen Realty Corp. v. Holbert,* 227 Va. 441, 318 S.E.2d 592, 596 (1984) (statutory conspiracy); *Commercial Business Systems, Inc. v. BellSouth Services, Inc.,* 249 Va. 39, 453 S.E.2d 261, 267 (1995) (common law conspiracy). In fact, the Sureties' complaint and briefs abound with examples and allegations of the improper and illegal nature of this transaction. Although the Sureties' claims and the trustee's fraudulent conveyance claim do not contain identical elements, they all share this same underlying focus. *See Litchfield Co. v. Anchor Bank (In re Litchfield Co.),* 135 B.R. 797, 804 (W.D.N.C.1992) (even though claims of the debtor and an individual creditor are "not identical" the court can stay proceedings initiated by the creditor in order to avoid "interfering with property of the estate").

■ The Sureties' causes of action are thus so similar in object and purpose to claims that the trustee could bring in bankruptcy court that the Sureties lack standing to pursue these claims in district court. Until the trustee has abandoned his potential fraudulent conveyance action, the Sureties cannot proceed with their claims in district court. In fact, this circuit has explicitly held that until there is an "abandonment" by the trustee of his claim the individual creditor has no standing to pursue it. *See Steyr–Daimler–Puch,* 852 F.2d at 136; *see also Chicago Truck Drivers, Helpers and Warehouse Workers Union (Indep.) Pension Fund v. Tasemkin, Inc.,* 59 F.3d 48, 51 (7th Cir. 1995) (specifically allowing successor liability suit because the bankruptcy proceeding had concluded).

It is clear that the trustee should have first crack at challenging the Ruppert/Green Thumb transaction—the trustee's role is to bring suits such as these on behalf of all the creditors. *See Steyr–Daimler–Puch,* 852 F.2d at 135. As a general matter "[t]he trustee's single effort eliminates the many wasteful and

competitive suits of individual creditors." *Koch Ref. v. Farmers Union Cent. Exch., Inc.,* 831 F.2d 1339, 1342–43 (7th Cir.1987). All creditors, not simply the Sureties, have a stake in exposing any impropriety in the Ruppert/Green Thumb transaction. If Ruppert secured a transfer of assets by unlawful means, all creditors of Green Thumb would be potentially disadvantaged by it.

To allow selected creditors to artfully plead their way out of bankruptcy court would unravel the bankruptcy process and undermine an ordered distribution of the bankruptcy estate. *See Litchfield,* 135 B.R. at 804. The goal of bankruptcy is to consolidate the proceeding and avoid piecemeal litigation—a goal that would be sacrificed by permitting the district court to entertain the merits of the Sureties' suit.

Reserving the action for the trustee maintains the integrity of the bankruptcy proceeding and ensures that individual creditors cannot hijack the bankruptcy process. If it were otherwise, there would be "a multijurisdictional rush to judgment whose organizing principle could only be first-come-first-served." *American Nat'l Bank v. MortgageAmerica Corp. (In re MortgageAmerica Corp.),* 714 F.2d 1266, 1274 (5th Cir.1983).*

For the foregoing reasons, the judgment of the district court is hereby

*AFFIRMED.*

---

* As we have resolved this case on standing grounds, we need not address the preclusion ruling issued by the district court.