**NATIONAL AMERICAN INSURANCE COMPANY and Gulf Insurance Company, Plaintiffs,**

v.

**RUPPERT LANDSCAPE COMPANY, INC. Defendant.**

**No. CA–00–1258–A.**

United States District Court, E.D. Virginia, Alexandria Division.

Nov. 21, 2000.

---

Neil L. Henrichsen, Washington, DC, for Plaintiffs.

C. Thomas Brown, Silver and Brown, Fairfax, VA, for Defendant.

## MEMORANDUM OPINION

CACHERIS, District Judge.

This matter is before the Court on Defendant's Motion for Summary Judgment. Plaintiffs' Complaint includes three counts: Count I posits corporate successor liability; Count II claims breach of contract; and Count III seeks to set aside a fraudulent conveyance. For the reasons stated below, Defendant's Motion is **GRANTED** as to Count II and DENIED as to Counts I and III.

### I. Background

The following facts are not in dispute. Green Thumb Landscape Company ("Green Thumb") supplied landscaping services for many years in the Washington, D.C., area. Green Thumb provided both landscape maintenance and landscape construction services.

The landscape construction services contracts often required payment and performance bonds. Plaintiffs National Ameri-

can Insurance Company ("NAIC") and Gulf Insurance Company ("Gulf") (collectively "Sureties") are bonding companies which issued several such bonds on behalf of Green Thumb's landscape installation projects in various states, including Virginia. NAIC issued three surety bonds and Gulf issued fifteen surety bonds on behalf of Green Thumb prior to July 31, 1995. *NAIC I* Mem. Op. at 2.[1]

Certain assets of Green Thumb were purchased by Ruppert Landscape Company, Inc., pursuant to a purchase agreement entered into on July 31, 1995.[2] These assets included equipment, employees, and contracts. For a period of time, work continued on the bonded landscape construction projects.

On October 27, 1995, Sureties brought a petition for involuntary Chapter 7 bankruptcy against Green Thumb, which Green Thumb contested. On December 1, 1995, the Honorable Robert G. Mayer was appointed as interim trustee. An order for relief was entered on February 22, 1996. Green Thumb then converted the proceeding to a Chapter 11 proceeding, then again to Chapter 7. On October 7, 1996, the court appointed Gordon Peyton, Esq. as the new trustee.

On December 20, 1996, a proceeding was held in Bankruptcy Court to determine whether an automatic stay should be lifted from a NationsBank promissory note made by Green Thumb and then held by Ruppert. The Court found that Green Thumb's obligation to Ruppert was duly secured by a security agreement and a perfected security interest relating back to its original creation by NationsBank in 1988. It therefore ordered the stay lifted.

The Court withheld judgment on whether "the Debtor [Green Thumb] received reasonably equivalent value with respect to the sale of its assets to [Ruppert] ." 12/20/96 Hearing Transcript at 187. At the same time, the Court expressly refrained from commenting on the merits of a possible action by the trustee to set aside a fraudulent conveyance under 11 U.S.C. § 548.[3]

On May 30, 1997, Plaintiff Sureties filed a diversity action against Defendant Ruppert in this Court (*"NAIC I"*). Their Complaint alleged that Ruppert's purchase of Green Thumb was fraudulent and lacked adequate consideration and that, as Green Thumb's corporate successor, Ruppert was liable for Green Thumb's debts and contingent liabilities. It also alleged that the seeming purchase left Green Thumb with insufficient assets to complete work on the bonded projects and pay its creditors. Finally, the Complaint alleged conspiracy.

The District Court granted Defendant Ruppert's Motion for Summary Judgment on grounds of lack of standing, collateral estoppel, and res judicata. First, the Court noted that an action to set aside the allegedly fraudulent conveyance is properly brought only by the trustee, unless the court finds that the trustee has abandoned the claim. *See Steyr–Daimler–Puch of America Corp. v. Pappas*, 852 F.2d 132 (4th Cir.1988) (applying Virginia law). There was no such finding in this case. Thus, the Court concluded that Plaintiffs lacked standing to prosecute the matter in court on a theory of successor liability or fraudulent transfer.

---

1. *"NAIC I"* refers to the Mar. 20, 1998 Memorandum Opinion of the District Court, discussed *infra*.

2. The parties dispute whether the purchase included certain landscape construction contracts entered into by Green Thumb. Defendant Ruppert contends it purchased only "select assets" pertaining to landscape maintenance contracts. Dft's Sum. Judg. Mem. at ¶¶ 6–7.

3. Judge Mitchell stated from the bench that "it's not my intent here to make any rulings that would be binding in a Section 548 action, which is a different creature [from the case before the Court] altogether.... I don't think I have enough evidence in front of me right now to decide." 12/20/96 Hearing Transcript at 188.

Second, the Court found that the Bankruptcy Court's Order was a valid and binding final judgment. Because Plaintiffs, as unsecured creditors, were in privity with the Trustee appointed to represent their interests, their rights were affected by the proceeding. *See In re American Hawk Enter., Ltd.*, 52 B.R. 395, 400 (E.D.Va. 1985). There was a hearing attended by Plaintiffs and the court entered a final judgment, making factual findings that were binding on Plaintiffs. For these reasons, the Court held, "[t]he judgment should be given preclusive effect as to any unsecured creditors who may seek to attack the validity of the transaction" between Ruppert and Green Thumb. *NAIC I* Mem. Op. at 4.

The Fourth Circuit affirmed the District Court's ruling on standing grounds without reaching the issue of preclusion. *National American Ins. Co. et al. v. Ruppert Landscaping Co., Inc.*, 187 F.3d 439 (4th Cir. 1999), cert. denied, — U.S. ——, 120 S.Ct. 1162, 145 L.Ed.2d 1073 (2000).

## II. Standard of Review

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.), cert. denied, 513 U.S. 813, 115 S.Ct. 67, 130 L.Ed.2d 24 (1994). In reviewing the record on summary judgment, "the court must draw any inferences in the light most favorable to the non-movant." *Brock v. Entre Computer Ctrs.*, 933 F.2d 1253, 1259 (4th Cir.1991).

The party seeking summary judgment has the initial burden to show the absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, the mere existence of a scintilla of evidence in support of a non-moving party's position is insufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. Rather, the court must "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *Brock*, 933 F.2d at 1259.

## III. Analysis

At issue here is whether the Sureties may properly bring this suit. Defendants contend Plaintiff Sureties are barred by the statute of limitations, collateral estoppel, and res judicata.

### 1. The Statute of Limitations Claim

■ Defendant argues that the "only action" still available to Plaintiffs is to set aside a fraudulent conveyance under 11 U.S.C. § 548. This argument is based on Judge Mitchell's comment that he reserved judgment on any possible action under that statute, without mentioning other possible causes of action. It also reflects the suggestion in *NAIC I* that a fraudulent conveyance action was the sole potential claim remaining to Plaintiffs, and since that claim belonged to the Trustee, Plaintiffs could not properly pursue it. The Court finds Defendant's reading too narrow and instead reads those earlier statements as encompassing, at the least, all actions relating to the core fraudulent conveyance issues of the § 548 claim.

Plaintiffs have corrected the lack of standing that barred them from bringing the avoidance action in *NAIC I*. As the court in *NAIC I* recognized, under the Bankruptcy Code, during the pendency of a bankruptcy action, the trustee "is the representative of the estate" and "has capacity to sue and be sued." 11 U.S.C. § 323(a), (b). Once a trustee is appointed to represent a debtor's estate, the trustee alone may bring suit to set aside a fraudulent conveyance made by the debtor to avoid his creditors. 11 U.S.C. § 548; *see Steyr–Daimler–Puch of Am. Corp. v. Pap-*

pas, 852 F.2d 132, 136 (4th Cir.1988). However, in this case the trustee examined and rejected the cause of action for fraudulent conveyance, *see* Trustee's Motion for Approval of Settlement and Compromise ¶ 4 (6/15/00), and the Bankruptcy Court auctioned off the right to pursue the claim. The Sureties purchased the right on July 13, 2000, and now seek to pursue any valid claims the trustee had against Defendant.

In its 1998 opinion, the Fourth Circuit found that the core claims brought by Plaintiffs all had the "same focus," i.e., undoing the allegedly fraudulent conveyance of Green Thumb's assets to Defendant. *National American Ins. Co.*, 187 F.3d at 441. Moreover, the Court observed that Plaintiff's claims were "so similar in object and purpose to claims that the trustee could bring in bankruptcy court that the Sureties lack[ed] standing to pursue these claims in district court" until the trustee abandoned the claims. *Id.* This suggestion, read in the light most favorable to the non-moving party here, indicates that while the trustee considered whether to pursue the action, the Sureties' claims were all in abeyance.

There has not been an "abandonment" by the trustee of his right of action, as that term is employed by the Bankruptcy Code. Instead, the trustee transferred the cause of action to the Sureties, who were creditors of the estate, in a "compromise or settlement" under Federal Rule of Bankruptcy Procedure 9019. An "abandonment" under 11 U.S.C. § 554, by contrast, returns property to the debtor as though no bankruptcy had occurred. Thus, the precise condition envisioned by the 4th Circuit in *National American Ins. Co.* has not come to pass. On the other hand, the Bankruptcy Court's auctioning off the fraudulent conveyance cause of action plainly reflects the trustee's decision not to pursue his exclusive right to bring such a fraudulent conveyance claim on behalf of all creditors of the debtor's estate. Therefore, the Plaintiffs may do so now on their own behalf if the claim is not barred by the applicable statute of limitations.[4]

■ An action under 11 U.S.C. § 548 would be barred by the statute of limitations in 11 U.S.C. § 546.[5] In their Count III, Plaintiffs instead brought a state law claim under Va.Code § 55–80, which provides that:

> Every gift, conveyance, assignment or transfer of . . . any estate . . . given with intent to delay, hinder, or defraud creditors, purchasers or other persons of or from what they are or may be lawfully entitled to shall, as to such creditors, purchasers or other persons, their representatives or assigns, be void.

The language in this provision closely parallels the "hinder, delay, or defraud creditors" language in 11 U.S.C. § 548(a)(1), and recovery is potentially available under both sections in a single case. *See In re Springfield Furniture, Inc.*, 145 B.R. 520 (Bankr.E.D.Va.1992) (holding a transfer void under § 55–80 and voidable under § 548(a)(1)). Moreover, in the state law action, as in the federal action, when a debtor has entered bankruptcy and a trustee has been appointed, the trustee stands in the shoes of creditors for pur-

---

**4.** Comments by the Court during oral argument on the Motion for Summary Judgment in *NAIC I* reflected a concern that the Sureties were trying to secure for themselves an advantage not shared with other creditors. The trustee's decision to auction the claim in a formal proceeding alleviates those concerns.

**5.** 11 U.S.C. § 546(a) (West 2000) provides:

An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—

(1) the later of—
 (A) 2 years after the entry of the order for relief; or
 (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or
(2) the time the case is closed or dismissed.

poses of liquidation of the estate. *Wick v. Yost,* 47 B.R. 697 (Bankr.W.D.Va.1985).[6]

 The first trustee was appointed on December 1, 1995. The order for relief was entered on February 22, 1996. The case has not been closed or dismissed. Therefore, the limitations provision in § 546(a) barred an action by the trustee under 11 U.S.C. § 548, at the latest, on February 22, 1998, two years after entry of the order for relief. Similarly, § 546(a)(1) barred an action by the trustee under the strong-arm statute, § 544(b), on the same date. The Bankruptcy Code would bar the trustee from pursuing a state law claim despite the fact that an action to show actual fraud under the Virginia Code provision, § 55–80, is not subject to any state statutory limitations period[7] and despite that fact that the statute of limitations on the other state law claims brought by Plaintiffs is five years.[8] Va. Code § 8.01–246. In short, the plain language of § 546(a) would have precluded the trustee from bringing the action on February 22, 1998, two years after the entry of the order for relief.

Plaintiffs contend that their purchase at auction on July 13, 2000, of "all claims [the trustee] or the [Green Thumb] estate has against Ruppert," without warranty of any kind, included the trustee's right of action under the Bankruptcy Act's strong-arm provision, § 544(b). Oppos. To Motion

for Sum. Judg. at 14. Implicit in their argument, however, is a suggestion that merely because they are not themselves trustees, the Bankruptcy Code's limitations period should not bar their claims. This argument is without merit. To reiterate, when Plaintiffs purchased the trustee's rights, the statute of limitations in the Bankruptcy Code had expired, and at that point the trustee no longer had a right to bring an action under § 55–80, pursuant to § 544(b), to avoid the Ruppert/Green Thumb conveyance. In other words, when the trustee conveyed to Plaintiffs, without warranty, all rights he then possessed, *those rights did not include a valid cause of action under § 544(b).* Therefore, because a party can not transfer better rights than he himself possesses, Plaintiffs' actions are likewise barred by the Code's statute of limitations unless they can bring the action of their own right.[9]

Congress's plenary power over bankruptcy derives from the constitutional imperative "[t]o establish ... uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const., Art. I, § 8. On the other hand, states continue to create their own, sometimes parallel body of laws governing fraud. The Bankruptcy Code clearly was not meant to preempt that body of law. *See, e.g., In re Springfield Furniture, Inc.,* 145 B.R. 520 (Bankr. E.D.Va.1992) (holding a single transfer

---

**6.** The trustee's power to pursue the state law claim arises under the Bankruptcy Act's "strong-arm statute," 11 U.S.C. § 544(b). *Havee v. Belk,* 775 F.2d 1209, 1218 (4th Cir. 1985).

**7.** *See Flook v. Armentrout's Adm'r,* 100 Va. 638, 42 S.E. 686 (1902).

**8.** The Sureties argue that because their claims would be timely under Virginia law, their action was timely filed. However, the better view is that the relevance of the state limitation period is to determine whether the action was time-barred *when the bankruptcy proceeding commenced.* Thereafter, by its plain language, the limitation period in § 546(a) expressly controls avoidance actions by the trustee under the strong-arm provision,

§ 544(b). *See, e.g., Bay State Milling Co. v. Martin,* 142 B.R. 260, 265 (Bankr.N.D.Ill. 1992); *cf. In re Dry Wall Supply, Inc.,* 111 B.R. 933, 936 (D.Colo.1990).

**9.** Indeed, relying on *In the Matter of Abingdon Realty,* 21 B.R. 290 (Bankr.E.D.Va.1982), Defendant argues that in this case, the trustee could not assign the cause of action at all. Given the Court's disposition of the statute of limitations issue, it is unnecessary to decide whether an avoidance action is assignable in the Fourth Circuit. However, the Court notes the Tenth Circuit's recognition that the case cited for that proposition in *Abingdon Realty, Webster v. Barnes Banking Co.,* 113 F.2d 1003 (10th Cir.1940), was superceded by the Bankruptcy Code. *In re Sweetwater,* 884 F.2d 1323 (10th Cir.1989).

void under § 55–80 and voidable under § 548(a)(1)).

The Sureties, as unsecured creditors, have standing in their own right to bring the state cause of action to avoid a fraudulent conveyance under Virginia law.[10] They also have independent standing to pursue a corporate successor liability claim. Their standing predated the appointment of the trustee, and, although it was in abeyance while the trustee possessed the right under the strong-arm provision in § 544(b), the Sureties regained standing when the trustee auctioned off his rights.[11]

On the other hand, the Sureties' other cause of action—for breach of contract—does not exist independently of the trustee's sale of his rights to them. Instead, their rights are entirely derivative of the trustee's ability to act on behalf of the debtor's estate. As noted above, the limitations provision in § 546(a)(1) barred the trustee from bringing any state law claims pursuant to the strong-arm provision on February 22, 1998, at the latest. Again, because a party can not transfer better rights than he himself possesses, the Sureties cannot now bring the breach of contract claim that was barred to the trustee.

In sum, viewing the record in the light most favorable to the Sureties, the Court finds it appropriate to **GRANT** Summary Judgment on Count II of the Complaint.

### 2. The Preclusion Claims

Defendant also argues that Plaintiffs are barred from bringing the instant action by the doctrines of res judicata and collateral estoppel. Defendant contends that the decisions of the Bankruptcy Court and this Court in *NAIC I* addressed the merits of this action and therefore serve to bar the Sureties from advancing their claims. In particular, Defendant argues that the alleged findings attributed to the Bankruptcy Court by the Court in *NAIC I* are now binding on the Sureties. The Court noted three findings in particular that it found "binding on Plaintiffs": "(1) the transaction between Ruppert and NationsBank was a purchase, and that the NationsBank notes are not paid off; (2) the Green Thumb/Ruppert transaction was a valid transaction not entered into for any ulterior purpose; and (3) Ruppert had a valid and perfected lien on the assets of Green Thumb." *NAIC I* Mem. Op. at 4.

■ The Court is guided by federal, not state, principles in determining whether to grant preclusive effect to a prior federal judgment. *See Shoup v. Bell & Howell Co.*, 872 F.2d 1178, 1179 (4th Cir.1989). Thus, in considering Defendant's claim that the Sureties' claims are precluded by those findings, it is proper to look to federal law regarding the doctrines of res judicata and collateral estoppel.

■ The doctrine of res judicata "bar[s] a second attempt to relitigate the same cause of action between the parties" to an earlier action, as well as any other claim or issue that could have been raised in the earlier action. *United States v. Tatum*, 943 F.2d 370, 381 (4th Cir.1991). The purpose of res judicata is to prevent parties to a prior action, or those with whom they are in privity, from rehashing

---

**10.** The Court therefore rejects Defendant's argument that Plaintiffs' state law fraudulent conveyance claim is exclusively derivative of the trustee's § 544(b) claim and is thus barred by the statute of limitations on a § 544(b) avoidance action, contained in § 546(a). By its terms, § 544(b) allows a *trustee* to bring an avoidance action that an unsecured creditor could bring. In order to conclude that § 546(a)(1) applies to a *creditor* bringing an avoidance action of its own right, the Court would be required to read the explicit refer-

ence to a trustee out of § 544(b), which it refuses to do.

**11.** The Sureties' role in forcing Green Thumb into involuntary bankruptcy is noted. While this might be interpreted as a knowing waiver of their own rights to bring an avoidance action, in favor of the trustee's right, the Court believes the better approach is to recognize that their independent standing survived the bankruptcy period.

claims that were or could have been resolved in the first proceeding. *See, e.g., Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) ("Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action."). Res judicata applies when there is "(1) a judgment on the merits in a prior suit resolving (2) claims by the same parties or their privies, and (3) a subsequent suit based on the same cause of action." *Coyne & Delany Co. v. Selman,* 98 F.3d 1457, 1473 (4th Cir.1996) (internal quotation marks omitted).

■ The *NAIC I* Court dismissed the Sureties' claim on standing grounds. Standing is a component of the Article III requirement that the federal courts hear only actual cases and controversies. As the Supreme Court has stated, "[s]tanding doctrine embraces several judicially self-imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights...." *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984); *see St. Pierre v. Dyer,* 208 F.3d 394, 400 (2d Cir.2000).[12] Plaintiffs argue that the dismissal on standing grounds reflected the Court's lack of jurisdiction and was not a judgment on the merits for purposes of res judicata. For this reason, Plaintiffs claim they should be permitted to bring the current action even though it involves the same parties and same underlying transaction as *NAIC I.* The Court agrees.

■ However, even if *NAIC I* did not culminate in a judgment on the merits, thus rendering the doctrine of res judicata inapplicable, collateral estoppel may still apply. "[A] jurisdictional dismissal that does not constitute a judgment on the merits so as to completely bar further transactionally-related claims still operates to bar relitigation of issues actually decid-

ed by that former judgment." *Goldsmith v. Mayor & City Council of Baltimore,* 987 F.2d 1064, 1069 (4th Cir.1993).

■ The doctrine of collateral estoppel prevents parties from relitigating an issue of fact or law that was settled in a previous case. *See Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). The doctrine "can be applied to narrower portions of an action than is the case for res judicata." *Tatum,* 943 F.2d at 382. To establish that collateral estoppel should bar a claim, the proponent must establish that:

> (1) the issue sought to be precluded is identical to one previously litigated; (2) the issue must have been actually determined in the prior proceeding; (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment must be final and valid; and (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum.

*Sedlack v. Braswell Servs. Group, Inc.,* 134 F.3d 219, 224 (4th Cir.1998). Thus, Defendant here must demonstrate that an issue identical to a material issue in this case was actually determined and was essential to the prior decision. If so, and as long as the other elements of collateral estoppel are met, the Sureties will be bound by issues determined in *NAIC I.*

■ As noted above, Defendant contends that three findings made in *NAIC I* are now binding on Plaintiffs and act to bar their suit. "In order for the determination of an issue to be given preclusive effect, it must have been necessary to a judgment." *United States v. Fiel,* 35 F.3d 997, 1006 (4th Cir.1994). The Court's disposition in *NAIC I* did not require a ruling on the preclusive effect of any findings the Bankruptcy Court might have made. In-

---

**12.** The Fourth Circuit has apparently not decided the precise issue of whether a dismissal

on standing grounds is a dismissal on the merits.

stead, the basis for the prior summary judgment Order was the Plaintiffs' lack of standing to bring the action. Applying the rule in *Fiel*, the Court's statements relating to the substantive merits of the claims were therefore unnecessary to the grant of summary judgment in *NAIC I. See Pizlo v. Bethlehem Steel Corp.*, 884 F.2d 116, 119 (4th Cir.1989); *cf.* Restatement (Second) of Judgments § 20, Comment e and Illustration 4 at 173 (when a lawsuit is dismissed on alternative grounds, one of which would not render the judgment a bar to another action on the same claim, the dismissal should not operate as a bar to the subsequent suit). Thus, the Court finds that summary judgment against Plaintiffs in *NAIC I*, like the 4th Circuit's ruling, *see National American Ins. Co.*, 187 F.3d at 442 n. *,[13] was granted on standing grounds.[14] The current fraud claims therefore are not precluded by *NAIC I*.

 Moreover, the statements attributed to the Bankruptcy Court in the 12/20/96 lift stay proceeding also do not bar the current suit. A final judgment under 28 U.S.C. § 1291 (1994) is "one which ends the litigation ... and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945). The Fourth Circuit has held that an order **denying** a request to lift a stay is a final, appealable order. *Grundy Nat'l Bank v. Tandem Mining Corp.*, 754 F.2d 1436 (4th Cir.1985). Apparently the Fourth Circuit has never addressed, in a published opinion, whether an order **granting** a request to lift a stay is a final order. However, it has recognized limits on the scope of a lift stay proceeding. In *County Fuel Co. v. Equitable Bank Corp.*, 832 F.2d 290, 293 (4th Cir.1987), it observed that

> the only matters potentially in issue in relation to a motion to lift an automatic stay relate to the adequacy of the creditor's protection, the debtor's equity, and the necessity of the property to effective reorganization; the merits of claims are not in issue and the procedural setting is not one appropriate for the assertion of counterclaims. *See In re Johnson*, 756 F.2d 738, 740 (9th Cir.1985).

The lift stay proceeding in this case was expressly not a hearing on the possibility or merits of a fraudulent conveyance action by the trustee, as Judge Mitchell's comments made clear.[15] Instead, the proceeding dealt solely with the automatic stay that had descended on the NationsBank promissory notes held by Ruppert. The Court finds that it was not the purpose of the proceeding before the Bankruptcy Court to produce a final judgment on the merits of a possible fraudulent conveyance claim. Moreover, the disputed findings were not necessary to a determination of whether the automatic stay on the NationsBank notes should be lifted. For these reasons, the statements do not bar the current action by the Sureties.

### Conclusion

For the foregoing reasons, the Motion for Summary Judgment is **GRANTED** as to Count II of Plaintiffs' Complaint. An appropriate Order will issue.

---

**13.** The Fourth Circuit also noted that "the trustee should have first crack" at bringing the fraudulent conveyance action. Viewing this statement in the light most favorable to Plaintiffs, the comment suggests the Fourth Circuit's opinion that the prior proceedings did not have a preclusive effect on the cause of action for fraudulent conveyance. *National American Ins. Co.*, 187 F.3d at 441.

**14.** Because Plaintiff's claims were dismissed on standing grounds, the dismissal arguably falls within the exception in Fed.R.Civ.P. 41(b) for lack of jurisdiction. Such a dismissal is without prejudice and does not reflect an adjudication on the merits.

**15.** See *supra*, note 3.