**In re Edward HOYT and James Gabriel, Plaintiffs.**

v.

**AERUS HOLDINGS, L.L.C., et al., Defendants.**

Adversary No. 2:10–ap–02204–RJH.

United States Bankruptcy Court, D. Arizona.

March 10, 2011.

Rick N. Bryson, Sanders & Parks PC, Phoenix, AZ, Stephen K. Lewis, Patti, Sgro & Lewis, Las Vegas, NV, Plaintiffs.

George Parker Young, Haynes and Boone LLP, Ft. Worth, TX, Thomas J. Salerno, Squire, Sanders & Dempsey (US) LLP, Brian J. Pollock, Lewis and Roca LLP, Phoenix, AZ, Robert N. Mann, Mann Law Firm PC, Scottsdale, AZ, for Defendants.

## ORDER DENYING MOTION TO REMAND, IN PART, and

## ORDER TRANSFERRING VENUE TO TENNESSEE

RANDOLPH J. HAINES, Bankruptcy Judge.

Pending before the Court are Plaintiffs' motion to remand this removed state court action, and Defendants' motion to transfer venue to the United States Bankruptcy Court for the Eastern District of Tennessee, where is pending the Chapter 7[1] bankruptcy case of Phoenix EQ Holdings Company, Inc. Because the Court con-

---

1. Except as otherwise indicated, all chapter, section and rule references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101– 1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

cludes this action is at least "related to" the Phoenix EQ bankruptcy case, the Court denies the motion to remand and orders the transfer of venue to Tennessee.

## Background Facts

Plaintiffs Edward Hoyt and James Gabriel are minority shareholders of EcoQuest Holding Corporation, which is now known as Phoenix EQ Holdings Company, Inc., the Debtor in a Chapter 7 case pending in the Eastern District of Tennessee. Pursuant to a pre-petition settlement agreement, Hoyt and Gabriel also had claims against EcoQuest, currently alleged to be more than $20 million, which were guaranteed by Defendant Michael Jackson.

Defendants' motion to remand alleges that in 2009 the EcoQuest board of directors "devised a scheme to transfer all of EcoQuest's assets to a third party, for an amount well below its fair market value." This was allegedly accomplished by a "friendly" foreclosure sale, which resulted in the transfer of all of EcoQuest's assets to Defendants Aerus Holdings and DBG Group Investments. After that transfer, EcoQuest filed a voluntary Chapter 11 petition under the name Phoenix EQ in the Eastern District of Tennessee, allegedly as part of the board's plan "to keep any remaining assets out of creditors' reach." That Chapter 11 case has since been converted to Chapter 7, and that Chapter 7 case remains pending in Tennessee.

Plaintiffs filed this complaint in the Superior Court for Maricopa County, Arizona. The initial complaint, filed in November of 2009, named only Michael Jackson as a defendant and sought liability only under his guarantee for an amount then alleged to be $6.7 million, plus interest, although the amount agreed to be paid under the settlement agreement was only $3.9 million. The complaint alleged that Plaintiff Hoyt was a resident of Maricopa County, Arizona; that Plaintiff Gabriel was a resident of San Diego County, California; and that Defendant Jackson was a resident of Greeneville, Tennessee.

A second amended complaint was filed on November 10, 2010, naming as defendants Aerus Holdings and DBG Group Investments, both Delaware limited liability companies, and several other defendants. Aerus and DBG filed timely notices of removal of the Arizona lawsuit to this Court.

Plaintiffs Hoyt and Gabriel have filed a motion to remand this case to state court, primarily based on an argument that this Court lacks jurisdiction because their lawsuit is not "related to" the bankruptcy case as required by 28 U.S.C. § 1334(b). In addition to opposing the motion to remand, Defendants have moved to transfer venue to the Bankruptcy Court for the Eastern District of Tennessee. There is also pending before this Court a motion to dismiss for lack of personal jurisdiction filed by Defendant Colonel Lee Roper.

## Analysis

■ Plaintiffs argue their case is not "related to" the Phoenix EQ bankruptcy case because their cause of action has nothing to do with the bankruptcy and, in particular, would not augment or otherwise affect the estate being administered by the Chapter 7 trustee, as required by the *Pacor* test for "related to" jurisdiction.[2] Plaintiffs argue that their claim is

---

2. *Pacor v. Higgins (In re Pacor, Inc.),* 743 F.2d 984 (3d Cir.1984); *Pacor* test adopted by 9th Circuit in *Fietz v. Great W. Sav. (In re Fietz),* 852 F.2d 455, 457 (9th Cir.1988). *But see In re Morrison,* 555 F.3d 473, 478–80 (5th Cir. 2009) (adopting a "pragmatic" analysis of bankruptcy jurisdiction to include jurisdiction to enter a money judgment on a nondischargeable claim, notwithstanding its lack of any conceivable effect on the estate and not-

merely a successor liability claim that could be based on evidence that the alleged successor is a "mere continuation" or reincarnation of the seller,[3] that would not bring any assets into the estate, and that the trustee cannot pursue. Defendants argue that the amended complaint effectively alleges a fraudulent transfer action that is not only related to the bankruptcy case but which only the trustee in bankruptcy can pursue.

■ The law is clear that both a debtor's causes of action and its creditors' avoidance actions are property of the debtor's estate and may only be pursued by the trustee unless they are abandoned.[4]

■ There does not appear to be controlling precedent in the Ninth Circuit deciding whether, or under what circumstances, a trustee may pursue a successor liability action. Although the underlying facts that support a finding of successor liability may differ from those necessary to find alter ego, the result is effectively the same in permitting a creditor of one corporation to hold another entity liable for its debts. The Ninth Circuit Bankruptcy Appellate Panel ("9th Circuit BAP" of

"BAP") has held that the question of whether a trustee may pursue a debtor's alter ego claim depends upon whether governing state law will permit a corporation to pierce its own corporate veil.[5] And the BAP further held that in making that determination the court will look to the law of the state in which the legal or equitable title to the cause of action is asserted, which apparently depends on the state where the debtor corporation is incorporated or has its principal place of business.[6] California law recognizes two types of alter ego claims, a general claim where there is injury to the corporation itself that generally affects all of its creditors, and a particularized claim that caused injury only to the individual plaintiff. The former vests in the trustee and may not be asserted by creditors, but the latter vests in creditors.[7]

But the District Court for the District of Arizona has concluded that an Arizona corporation may not allege alter ego liability because Arizona law would not allow a corporation to pierce its own veil.[8] The District Court ruling noted a nearly equal split of authority and no clear majority view. EcoQuest Holding Corporation,

---

ing its "tension" with the prevailing *Pacor* theory of bankruptcy jurisdiction); *accord, Cowen v. Kennedy (In re Kennedy),* 108 F.3d 1015, 1017–1018 (9th Cir.1997) (bankruptcy jurisdiction exists to enter judgment on a non-dischargeable claim).

3. *A.R. Teeters & Assocs. v. Eastman Kodak Co.,* 172 Ariz. 324, 836 P.2d 1034, 1039 (1992) (under Arizona law, when a corporation transfers its principal assets to a successor corporation, the latter will be liable for the debts and liabilities of the former if (1) there is an express or implied agreement of assumption; (2) the transaction amounts to a consolidation or merger; (3) the successor is a mere continuation or reincarnation of the seller; or (4) the transfer was for the fraudulent purpose of escaping liability for the seller's debts).

4. *CarrAmerica Realty Corp. v. Nvidia Corp.,* 302 Fed.Appx. 514, 516 (9th Cir.2009) (unpublished and nonprecedential but citable per Ninth Circuit Rule 36–3(b)); *Estate of Spirtos v. One San Bernardino County Super. Ct.,* 443 F.3d 1172, 1175–76 (9th Cir.2006); *Smith v. Arthur Andersen LLP,* 421 F.3d 989, 1002 (9th Cir.2005).

5. *CBS, Inc. v. Folks (In re Folks),* 211 B.R. 378, 384 (9th Cir. BAP 1997).

6. *Id.* at 384–85.

7. *Id.* at 385.

8. *Elegant Custom Homes, Inc. v. Dusharm (In re Elegant Custom Homes, Inc.),* No. CV–06–2574–PHX–DGC, 2007 WL 1412456, at *4 (D.Ariz. May 14, 2007).

which is now known as Phoenix EQ Holding Company, Inc., and is the debtor in the Tennessee bankruptcy case, was incorporated in Delaware, and the principal place of business for EcoQuest and Phoenix EQ is Tennessee. Defendants Aerus Holdings, LLC and DGB Group Investments, LLC are both Delaware limited liability companies. The *Elegant Custom Homes* ruling does not suggest how the issue might be resolved in either Tennessee or Delaware.[9]

But ultimately, at least on the facts alleged here, this Court concludes the trustee's standing, and his exclusive standing, will not be resolved by the state law of either the Debtor's state of incorporation or principal place of business. Rather, on these facts, the Bankruptcy Code and the bankruptcy jurisdictional statutes exclusively vest these causes of action in the EcoQuest trustee. This is because both property of the estate and bankruptcy jurisdiction hinge on the factual nexus rather than on the legal theory asserted in a creditor's complaint. And when that same factual nexus gives rise to both a cause of action assertable by the trustee and a cause of action assertable by a creditor, both causes of action must vest exclusively in the trustee until they are abandoned.

It is beyond dispute, for example, that even though creditors may have their own fraudulent transfer causes of action under the Uniform Fraudulent Transfer Act, upon the filing of bankruptcy only the trustee may pursue such causes of action. The Fifth Circuit expressly so held in *MortgageAmerica*.[10] Although no express

language of the Bankruptcy Code explicitly precludes creditors from bringing their own causes of action when they overlap with trustees' causes of action, the Supreme Court established this principle under the Bankruptcy Act of 1867 that only the trustee may pursue those causes of action once a bankruptcy case is filed,[11] and the Fifth Circuit concluded that the enactment of the Bankruptcy Code was not intended to change that law.[12]

The *MortgageAmerica* conclusion is neither difficult nor debatable when the creditor's cause of action is identical to the trustee's, either because the creditor's UFTA action is essentially the same as the trustee's cause of action under Code § 548, or because the creditor's cause of action is an avoidance action that the trustee can assert pursuant to Code § 544(b). The issue here, which was not addressed in *MortgageAmerica*, arises when the creditor's cause of action is arguably not identical to the trustee's cause of action but hinges on the same facts.

The Fourth Circuit addressed this situation in *Ruppert*.[13] In that case sureties of Green Thumb sued the purchaser of its assets, Ruppert, alleging tortious interference with their contract with Green Thumb, conspiracy and successor liability. The District Court granted Ruppert summary judgment on the ground the sureties lacked standing to bring those actions, because they had vested exclusively in Green Thumb's Chapter 7 trustee. The Fourth Circuit affirmed. It did so because to make out their successor liability claim the

9. *Id.* at *3–4 (Judge Campbell does not cite to either a Tennessee or a Delaware case on the issue).

10. *Am. Nat'l Bank of Austin v. MortgageAmerica Corp. (In re MortgageAmerica Corp.)*, 714 F.2d 1266, 1275 (5th Cir.1983).

11. *Glenny v. Langdon*, 98 U.S. 20, 22, 27–31, 25 L.Ed. 43 (1878).

12. *In re MortgageAmerica*, 714 F.2d at 1275.

13. *Nat'l Am. Ins. Co. v. Ruppert Landscaping Co., Inc.*, 187 F.3d 439 (4th Cir.1999).

sureties relied heavily on exposing the Green Thumb–Ruppert transaction to be fraudulent in fact, alleging facts that also provided the trustee "a potential fraudulent conveyance action." [14] The Fourth Circuit opinion noted that "[a]lthough the Sureties' claims and the trustee's [potential] fraudulent conveyance claim do not contain identical elements, they all share this same underlying focus." [15] Consequently it held that at least until the trustee abandoned the fraudulent conveyance action, the sureties lacked standing to bring their action because "the trustee should have first crack at challenging the Ruppert/Green Thumb transaction." [16] And the opinion noted that "[t]o allow selected creditors to artfully plead their way out of bankruptcy court would unravel the bankruptcy process and undermine an ordered distribution of the bankruptcy estate." [17]

*Ruppert* is on all fours here. Although the issue here is jurisdiction rather than standing or the automatic stay, the result must be the same: creditors cannot artfully plead their way out of bankruptcy jurisdiction. And although *Ruppert* has not been expressly adopted in the Ninth Circuit, it is entirely consistent with Ninth Circuit cases on the scope of bankruptcy jurisdiction.

In *Fietz*, the Ninth Circuit held that "the *Pacor* definition best represents Congress's intent to reduce substantially the time-consuming and expensive litigation regarding a bankruptcy court's jurisdiction over a particular proceeding." [18] But as this Court has previously noted, at least as applied in the Ninth Circuit "the *Pacor* test is merely a simplified shorthand gloss for finding the existence of jurisdiction, but is not a determinative test for finding that jurisdiction does not exist." [19] One reason for that conclusion is because the Ninth Circuit has twice held that bankruptcy jurisdiction exists when there is no conceivable effect on the estate—jurisdiction to enter a money judgment on a non-dischargeable debt,[20] and jurisdiction post-confirmation when the estate has ceased to exist.[21] In the latter circumstance, the Ninth Circuit adopted the Third Circuit's "close nexus" test [22] and described it as being "more limited" than the *Pacor* test.[23]

Although some of the analysis of the "close nexus" test focuses on the debatable issue of whether it is narrower or broader than the *Pacor* test,[24] there is a more fundamental difference between the tests

---

14. *Id.* at 441.

15. *Id.*

16. *Id.*

17. *Id.* at 442.

18. *In re Fietz*, 852 F.2d at 457 ("The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy.... *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984) (emphasis in original).").

19. *Nat'l Retail Dev. Partners I, LLC v. Maness (In re Mortgages, Ltd.)*, 399 B.R. 673, 677 (Bankr.D.Ariz.2008).

20. *In re Kennedy*, 108 F.3d at 1017–1018.

21. *State of Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189 (9th Cir.2005).

22. *Id.* at 1194, *citing* the standard articulated in *Binder v. Price Waterhouse & Co., LLP (In re Resorts International, Inc.)*, 372 F.3d 154, 166–67 (3d Cir.2004).

23. *In re Pegasus Gold*, 394 F.3d at 1194.

24. *E.g., In re Mortgages, Ltd.*, 399 B.R. at 677 ("the close nexus test is *broader* than the *Pacor* test").

that has gone largely unnoticed. The "close nexus" test is neither a narrower or broader version of the *Pacor* test but is a fundamentally different test. This is because the *Pacor* test focuses on the result or the remedy available at the conclusion of the legal proceeding or, more properly, on the effect of that remedy on the estate. But the "close nexus" test focuses instead on the relationship among the underlying facts, not on the legal remedy that might arise from those facts.

That difference in focus becomes stark in the positions of the parties here. The Plaintiffs argue their action is not "related to" the bankruptcy case because the remedy they seek—to hold a successor liable for the Debtor's debts—will not bring any assets into the estate. The Defendants argue the action is related to the bankruptcy case because of the factual nexus with the trustee's potential fraudulent transfer action, even though the remedies would be different.

The Ninth Circuit's shift of focus from the remedy to the nexus of the underlying facts as a basis for "related to" bankruptcy jurisdiction is essentially the same shift in focus that occurred in evolution of pendent federal jurisdiction. The Supreme Court summarized that shift in focus in *United Mine Workers v. Gibbs*.[25] *Gibbs* noted that prior to the merger of law and equity, the meaning of "cause of action" was confusing and often focused on the nature of the remedy sought or available. But the effective holding in *Gibbs* was to change that focus, for purposes of pendent jurisdiction, away from the remedy and toward the determination of a "common nucleus of operative fact."[26] *Gibbs* therefore held

that federal jurisdiction exists over all the claims "if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding."[27]

The *Gibbs* test became the test for federal pendent jurisdiction, and is today codified in 28 U.S.C. § 1367: supplemental jurisdiction exists "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."[28] *Gibbs* must have provided the meaning of "related to" that Congress understood and intended when it codified bankruptcy jurisdiction under the Code, originally in 28 U.S.C. § 1471 and currently in 28 U.S.C. § 1334. And now, at least in the Ninth Circuit, the "close nexus" test focuses on essentially the same basis—*Gibbs*, 28 U.S.C. § 1367, "close nexus," and "related to" under 28 U.S.C. § 1334(b) all focus on the common nucleus of operative fact, instead of on the remedy or its effect.

■ The amended complaint in this adversary proceeding leaves no doubt that, except for the Counts 17–20 concerning Jackson's guarantee, it hinges on facts that share a common nucleus with the kind of avoidance actions that the EcoQuest Chapter 7 trustee may file. Consequently "related to" jurisdiction exists, and therefore the removal is proper. Since this is an action that may exclusively vest in the Chapter 7 trustee, there is no equitable reason to remand.

25. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

26. 383 U.S. at 725, 86 S.Ct. 1130.

27. *Id.*

28. 28 U.S.C. § 1367(a).

### Motion to Transfer Venue

 Defendants have filed a motion to transfer venue to the Eastern District of Tennessee on the basis that they have no contacts with the District of Arizona; the transactions in question, including the transfers of the assets and the foreclosure occurred in Tennessee; and all of the relevant evidence and witnesses are located in Tennessee. Defendants argue that the only connection to the District of Arizona is that it is the residence of one of the two Plaintiffs in the state court action that was removed to this Court. Plaintiffs do not dispute the arguments concerning the extent of the connections of this case to the District of Arizona. They do, however, state that the settlement agreement contains a choice of law and venue provision that provides for resolution in Arizona and application of Arizona law regarding enforcement of the settlement agreement. However, the Court finds and concludes that the settlement agreement merely gives rise to the debt Plaintiffs are seeking to recover, not to their causes of action under a theory of successor liability (other than their suit on the Jackson guarantee).[29]

Bankruptcy Rule 7087 and 28 U.S.C. § 1412 allow for a court to transfer an adversary proceeding, or any part thereof, to a district court for another district if such transfer is "in the interest of justice or for the convenience of the parties."[30] The Court finds and concludes on the record of this case that the transactions and foreclosure concerning the transfer of assets from Phoenix EQ to the Defendant limited liability companies occurred in Tennessee. The Court acknowledges that the evidence and witnesses concerning this transfer all are located in Tennessee. Based on the foregoing, the Court finds that it is in the interest of justice and for the convenience of the parties that the remaining portions of this adversary proceeding that are not remanded to the state court should be transferred to the Eastern District of Tennessee. The Court will grant the motion to transfer venue to this extent.

Accordingly,

IT IS ORDERED granting the motion to remand in part and denying the motion to remand in part. The motion for remand is granted as to Counts 17–20 on the Jackson guarantee; the motion for remand is denied as to all Counts other than Counts 17–20;

IT IS FURTHER ORDERED granting the motion to transfer venue of the remaining portions of this adversary proceeding to the United States District Court for the Eastern District of Tennessee; and

IT IS FURTHER ORDERED that this Court does not rule on any of the motions to dismiss.

---

29. The original settlement agreement contained a provision that the exclusive venue for all legal actions "regarding this Agreement and all other agreements executed pursuant hereto" shall be in Maricopa County, Arizona. The First Amendment to that settlement agreement contained the Jackson guarantee, and therefore may be regarded as another "agreement executed pursuant hereto." In his Answer to the original complaint that was a suit only on his guarantee, Defendant Jackson did not preserve an affirmative defense of improper venue pursuant to Rule 12(b)(3) and Rule 12(h).

30. 28 U.S.C. § 1412.