# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 35331

| | |
|---|---|
| JERRY CHRISTIAN and JOY CHRISTIAN, husband and wife, | ) ) |
| | ) Pocatello, September 2009 Term |
| Plaintiffs-Appellants, | ) |
| | ) 2009 Opinion No. 130 |
| v. | ) |
| | ) Filed: October 20, 2009 |
| DAVID MASON, | ) |
| | ) Stephen W. Kenyon, Clerk |
| Defendant-Respondent. | ) |
| | ) |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Hon. Jon J. Shindurling, District Judge.

The district court's order is <u>vacated</u> and the case is <u>remanded</u>.

Marcus, Christian, & Hardee, L.L.P., Boise, for appellants. Michael Christian argued.

Wright, Wright, & Johnson, P.L.L.C., Idaho Falls, for respondent. David A. Johnson argued.

———————————

J. JONES, Justice.

This is an appeal from the dismissal of Jerry and Joy Christians' action to set aside an allegedly fraudulent transfer. The district court dismissed the action, finding that the Christians' lacked standing because their claim was preempted by federal bankruptcy law. We vacate and remand.

## I.

### Factual and Procedural Summary

Jerry and Joy Christian were victims of a Ponzi scheme operated by Robert McClung. McClung, posing as a day trader and investment advisor, convinced several parties to invest with him. McClung provided his investors with fraudulent account statements each month, showing consistent gains and no losses in order to induce his victims to continue to invest. In total,

1

McClung obtained $1.7 million from his victims, including $296,000 from the Christians, and lost $1.1 million, largely as the result of high-risk investments and conversion of the funds to his personal use. The Idaho Department of Finance began investigating McClung in July 2002 and filed suit against him in November 2002 in order to stop his violations of the Idaho Securities Act and to regain the funds he had taken from investors. McClung also notified his victims in July 2002 that he would no longer be trading.

Because of the Department of Finance investigation and the resulting collapse of his scheme, McClung was forced to file bankruptcy in 2003. As a result of McClung's fraud, the Christians obtained judgment against McClung from the bankruptcy court in the amount of $154,690.80, a debt that was not discharged by the bankruptcy court. McClung eventually pleaded guilty to mail and wire fraud in federal district court in 2004 and was sentenced to 36 months in federal prison.

David Mason also invested with McClung. Mason began investing money with McClung in February 2001. Unlike the Christians, Mason consistently withdrew the purported earnings from his investment with McClung from June 2001 to November 2001. As a result, Mason paid McClung $166,042.06 and received $198,915.08, resulting in a net gain to Mason of $32,873.02. Despite the fact that some of the funds invested by Mason were the proceeds of the sale of his father's home, all funds were paid to McClung by Mason, and all proceeds from the investment were paid to Mason.

On July 20, 2006, the Christians filed a complaint against Mason, seeking to recover the $32,873.02 paid to him by McClung under Idaho Code sections 55-916(1)(a) and 55-917(2)(a) on the ground that the transactions were voidable fraudulent transfers under Idaho Code sections 55-913(1)(a), (1)(b), and 55-914(1). The Christians sought judgment declaring the transfers from McClung to Mason void, and granting recovery of $32,873.02. Mason filed an answer on January 31, 2007, denying that McClung's scheme was fraudulent and that the payments made to him by McClung were void. Mason also specifically denied that the payments to him constituted "fictitious investment gains." Additionally, Mason asserted several affirmative defenses, only two of which have been pursued—that the claim was barred by the statute of limitations and that he was entitled to retain the payments because he entered into the transaction in good faith and gave reasonably equivalent value.

2

Mason moved for summary judgment on December 20, 2007, asking the district court to dismiss the case. Mason asserted that the funds received from McClung were his father's funds and that the Christians had failed to assert actionable claims because all but $1,572.13 that was returned to him was principal, and the remaining payments that were made were outside of the statute of limitations. Additionally, Mason asserted that even if the Christians were not barred by the statute of limitations, he was still entitled to judgment as a matter of law because he took the funds in good faith and gave reasonably equivalent value. The Christians filed a cross-motion for summary judgment on January 3, 2008, asking the court to find that the transfers to Mason were fraudulent as a matter of law because transfers resulting from a Ponzi scheme are presumptively fraudulent.

The district court, considering the parties' motions for summary judgment, sua sponte raised the issue of standing to bring the action and dismissed the case on that basis because it found that an action under the Uniform Fraudulent Transfer Act was preempted by federal bankruptcy law. The Christians appealed to this Court, asserting that they have standing to pursue the action and that the district court should have granted their summary judgment motion because the transfers to Mason were fraudulent as a matter of law.

## II.

### Issues on Appeal

The following issues are presented: (1) whether this Court can properly review the issues presented in the parties' motions for summary judgment; (2) whether the district court was correct in determining that the Christians lacked standing because the fraudulent transfer action was preempted by federal bankruptcy law; and (3) whether Mason is entitled to attorney's fees on appeal.

### A.

### Standard of Review

Jurisdictional issues, such as standing, and the interpretation of statutory language that confers standing are questions of law over which this Court exercises free review. *See St. Luke's Reg. Med. Ctr. v. Bd. Of Comm'rs*, 146 Idaho 753, 755, 203 P.3d 683, 685 (2009); *Taylor v. Maile*, 146 Idaho 705, 709, 201 P.3d 1282, 1286 (2009). Whether Idaho law is preempted through the operation of the Supremacy Clause of the U.S. Constitution is also a question of law

over which this Court exercises free review. *In re Estate of Mundell*, 124 Idaho 152, 153, 857 P.2d 631, 632 (1993).

**B.**

The Christians contend that this Court should reverse the district court and find that the transfers from McClung to Mason were fraudulent as a matter of law. Mason contends the Court should uphold a grant of summary judgment in his favor by the district court. Both parties overlook the fact that the district court did not grant summary judgment. Instead, the court raised the issue of standing sua sponte and found that the Christians lacked standing to bring a fraudulent transfer claim, dismissing the action on that basis. As such, this Court cannot review the summary judgment issues because of the operation of Idaho Appellate Rule 11.

Idaho Appellate Rule 11 provides that, in civil actions, "[j]udgments, orders and decrees which are final" are appealable. Idaho App. R. 11. Here, the district court dismissed the case on its own motion, based on a finding that the Christians lacked standing. Despite the fact that the district court dismissed the case after receiving cross-motions for summary judgment and taking them under advisement, the court did not rule on the issues raised in those motions. This is true in spite of the fact that the district court styled its opinion as "Opinion, Decision, and Order on Defendant's Motion for Summary Judgment and Plaintiffs' Motion for Summary Judgment." Because the district court dismissed the case without reaching the merits of those motions and made no indication that it was granting them in the substance of the opinion, no final order has been issued on a summary judgment motion in this case.

**C.**

Mason argues the district court properly found that federal bankruptcy law preempts a claim under the Uniform Fraudulent Transfer Act (UFTA) because the power to pursue those claims is vested solely in the bankruptcy trustee by 11 U.S.C. § 544(b). Mason asserts that because the Christians have not brought their claim in any bankruptcy-related context or obtained the approval of the bankruptcy court, they are not entitled to sue. Mason also argues that allowing the Christians to pursue the state law claim would frustrate the purpose of the bankruptcy law, which is to ensure equitable distribution of potential assets among all creditors.

The Christians argue that they are entitled to bring a claim under the UFTA because the bankruptcy trustee is now barred from doing so by 11 U.S.C. § 546(a). The Christians contend that a bankruptcy case does not have to be closed before a creditor is entitled to assert a UFTA

4

claim; the trustee must simply have lost the power to pursue the claim according to the bankruptcy code. The Christians note that they did not file suit until well over a year after the trustee had lost the right to bring the UFTA claim.

The Christians' state law UFTA claims are not preempted by federal law. "The preemption of state law is not to be readily inferred." *Mundell*, 124 Idaho at 153, 857 P.2d at 632. Federal law may preempt state law in one of two ways. *Boundary Backpackers v. Boundary County*, 128 Idaho 371, 376–77, 913 P.2d 1141, 1146–47 (1996) (quoting *Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 581 (1987)). First, if Congress has shown the intent to occupy a given field, any state incursion into that field is preempted by federal law. *Id.* Second, even if the field is not preempted, if state law conflicts with federal law, it is preempted to the extent of the conflict. *Id.* In order to find that a state law has been preempted, this Court must determine that the law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Mundell*, 124 Idaho at 153, 857 P.2d at 632 (quoting *Maryland v. Louisiana*, 451 U.S. 725, 747 (1981)). Essentially, this Court must find that a state law is directly contrary to the congressional intent behind a federal statute before state law will be preempted.

In *Mundell*, this Court was called upon to decide whether language in the Internal Revenue Code stating that a statute "shall be applied without regard to any community property laws" clearly indicated congressional intent to preempt Idaho community property law. *Id*. at 154, 857 P.2d at 633. This Court rejected that argument, finding that language in the statute acknowledged the effects of community property law on its provisions, which indicated congressional intent not to preempt state domestic relations law. *Id*.

Preemption was found in *Boundary Backpackers*. 128 Idaho 731, 913 P.2d 1141. In that case, this Court considered whether the plenary power over federal land granted to the federal government by the Property Clause of the U.S. Constitution preempted a land use ordinance in Boundary County. *Id.* at 373–75, 913 P.2d at 1143–45. Provisions in the ordinance placing requirements on federal agencies in their use of land were found to be preempted by the Property Clause because they impeded the exercise of plenary power over federal lands, directly conflicting with federal statutes and authority. *Id*. at 377, 913 P.2d at 1147.

The preemption question in this case is not quite as clear cut as the one presented in *Boundary Backpackers* or *Mundell*, and resolution of the question will require an examination of

the intent underlying various provisions of the bankruptcy code and the UFTA. Congress is empowered to establish "uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const., Art. I, § 8, cl. 4. In light of this grant of authority, the U.S. Supreme Court has held that state laws will only be preempted by federal bankruptcy laws to the extent that they actually conflict with the system of laws established by Congress. This means that the purposes of the two laws in question need to be compared and a determination made whether the law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *See Stellwagen v. Clum*, 245 U.S. 605, 613 (1918); *Mundell*, 124 Idaho at 153, 857 P.2d at 632 (1993) (quoting *Maryland*, 451 U.S. at 747). This Court has never directly addressed the issue of preemption between bankruptcy law and state law; however, federal law provides an analytical framework for answering this question.

*Sherwood Partners, Inc. v. Lycos, Inc.* examined the validity of a California state law that allowed voluntary assignees of creditor's claims to recover preferential transfers from the debtor. 394 F.3d 1198 (9th Cir. 2005). The key question in determining the validity of the statute was whether it was consistent "with the essential goals and purpose of federal bankruptcy law." *Id*. at 1202. The two mains goals of bankruptcy law, as articulated by the Ninth Circuit and the U.S. Supreme Court, are "(1) giving the individual debtor a fresh start, by giving him a discharge of most of his debts; and (2) equitably distributing a debtor's assets among competing creditors." *Id.* at 1203 (citing *Stellwagen*, 245 U.S. at 617). The court found a state statute that gave an assignee selected by the debtor the power to void preferential transfers that could not be voided by an unsecured creditor to be in conflict with the second purpose because it vested the power in a party who may not exercise the power for the benefit of all creditors, thus disrupting equitable distribution.[1] *Id.* at 1204. The court indicated the statute was in conflict with equitable

---

[1] The statute essentially vested a transferee with an avoidance power similar to that found in the UFTA. It provided:

> [T]he assignee of any general assignment for the benefit of creditors . . . may recover any transfer of property of the assignor:
>
> (1) To or for the benefit of a creditor;
>
> (2) For or on account of an antecedent debt owed by the assignor before the transfer was made;
>
> (3) Made while the assignor was insolvent;
>
> (4) Made on or within 90 days before the date of the making of the assignment . . .; and

6

distribution principles because it would provide an incentive for a creditor not to act under bankruptcy law in order to avoid equitable distribution. *Id.* at 1205.

The Ninth Circuit also addressed the issue of preemption of state law UFTA claims in a recent case, *Donell v. Kowell*, finding that the exercise of avoidance powers by a receiver under the UFTA was not preempted by the federal securities law. 533 F.3d 762 (9th Cir. 2008), *cert. denied* 129 S.Ct. 640 (2008). In *Donell*, the victim of a Ponzi scheme objected to a receiver's fraudulent transfer claim against him, claiming that a state law UFTA claim was preempted under federal securities law.[2] *Id.* at 767–68. The court found that the UFTA actually furthered federal securities law because it provided a remedy for defrauded debtors, thus endorsing the UFTA as a means of recovery for Ponzi scheme victims.[3] *Id.* at 775. Further, although the court does not expressly state that the UFTA is not preempted by bankruptcy law, it does note that the bankruptcy code expressly incorporates UFTA provisions in support of its finding that the UFTA is not preempted by federal securities law. *Id.* at 775 n.7.

Finally, the Sixth Circuit directly addressed the preemptive effect of the bankruptcy code on state law fraudulent conveyance actions in *Hatchett v. United States*. 330 F.3d 875 (6th Cir. 2003). In *Hatchett*, the United States levied on four parcels of real property formerly owned by Hatchett in an attempt to collect more than $8 million in tax debt. *Id.* at 878–79. The district court dismissed the claim on the basis of standing, finding that the bankruptcy trustee who had been previously appointed had exclusive authority to pursue the claims. *Id.* at 885. The Sixth Circuit rejected this theory, finding that while the trustee had the exclusive right to bring the claim during the bankruptcy proceedings, that exclusivity does not extinguish the right of a creditor to bring a state law claim after the debtor receives a discharge in bankruptcy. *Id.* at 886;

---

(5) That enables the creditor to receive more than another creditor of the same class.

Cal. Civ. Proc. Code § 1800(b).

[2] The facts of *Donell* are quite similar to the case at bar. Kowell and his mother both invested in what was later discovered to be a Ponzi scheme, and had collected returns on their investment, resulting in a return of funds in excess of what they had invested. *Id.* at 767–68. As a result of an SEC enforcement action against the operator of the Ponzi scheme, the scheme's funds and claims were placed with a receivership. *Id.* at 768. The receiver subsequently sought recovery of the excess returns that had been paid to Kowell and his mother in a state law action under California's version of the UFTA and Kowell claimed that the action was preempted by federal securities law. *Id.* at 768–69.

[3] The court cited a securities law provision that "permit[s] enforcement of 'any liability or duty' created by the Securities Act through 'all suits in equity and actions at law' that may prove effective." *Id.* at 775 (quoting 15 U.S.C. § 78aa (2000)). This provision indicates express congressional intent to allow enforcement of state law causes of action in pending federal securities claims.

*see also* 5 COLLIER ON BANKRUPTCY ¶ 548.01[1] (Alan N. Resnick & Henry J. Sommer eds. 15th ed. 2009) (noting that the trustee does not succeed to the avoidance rights of creditors under state law, but merely has the power to exercise them). The court in *Hatchett* relied on the Seventh Circuit holding in *Klingman v. Levinson*, which found that bankruptcy proceedings only imposed a stay on a fraudulent conveyance action by subsequent creditors until the bankruptcy case was closed. *Id.* (citing *Klingman v. Levinson*, 114 F.3d 620, 629 (7th Cir. 1997)). The court also relied on a similar Fourth Circuit finding. *Id.* (citing *Nat'l Amer. Ins. Co. v. Ruppert Landscaping Co.*, 187 F.3d 439, 441 (4th Cir. 1999) (holding that a state law fraudulent transfer claim may be pursued after the bankruptcy case has been closed)).

Under *Boundary Backpackers* and *Mundell*, it is necessary to review the goals of the UFTA in light of the purposes behind the bankruptcy code, as defined in the federal cases above, to determine whether the Christians' UFTA action frustrates those purposes. If so, then the UFTA will be preempted as a matter of law. In conducting this analysis, it is necessary to reconcile some seemingly contradictory federal law. *Sherwood* stands for the proposition that an avoiding power exercised by a party that is not using it for the benefit of all creditors is contrary to the federal bankruptcy policy of equitable distribution. Conversely, *Donell* indicates that UFTA recovery actions, which could potentially result in inequitable distribution, are consistent with federal securities law, as well as implying that they are consistent with federal bankruptcy law. The two cases, although seemingly in conflict, can be reconciled on their underlying facts. The plaintiff in *Donell* was a court-appointed receiver, acting for the benefit of all victims of a Ponzi scheme, while the general statutory scheme in *Sherwood* allowed any transferee of a credit interest to exercise the power exclusively for their own benefit.

Furtherance of the policy of equitable distribution is further called into question by the Fourth, Sixth, and Seventh Circuit cases that found that a creditor may exercise the UFTA right to avoid a fraudulent transfer once the bankruptcy case is closed. In these cases, the analysis was focused on the operation of the bankruptcy code, finding that where the trustee chose not to pursue his avoidance powers, the creditor could exercise the claim once the power to act on it was no longer vested in the trustee. The seemingly contradictory policy and operation of the bankruptcy code are reconciled on the facts of *Hatchett*. In *Hatchett*, the trustee chose not to pursue the estate's claims against Hatchett's properties because IRS tax liens on the property

exceeded any equity in them, which would have required the estate to expend more resources in recovering the properties than it would recover in value for the estate. 330 F.3d at 885.

Accordingly, the varying positions of the federal circuits can be reconciled on the basis of benefit to the estate. If the estate, in the trustee's discretion, would not receive a benefit from the exercise of the claim due to the facts and circumstances of the case, the trustee will not exercise it and the later exercise of the claim by a creditor under the UFTA will not be an obstacle to the achievement of the objectives of federal bankruptcy law.[4] Thus, in situations where the trustee has clearly demonstrated an intention not to pursue a state law fraudulent transfer claim, the claim may be pursued by any other creditor with a valid state law claim. Because the state law claim does not frustrate equitable distribution in that scenario, it is not preempted under *Boundary Backpackers* and *Mundell*.

Under the benefit to the estate theory, one question remains in this case—whether the Christians still lack standing because the bankruptcy estate was not yet closed at the time they brought their claim. Because the key focus of the circuit courts that have addressed the issue of preemption has been on when the right is no longer vested in, or has been abandoned by the trustee, it seems probable that the creditor would be entitled to bring a cause of action under state law after the trustee is barred from bringing the action under federal law. This reasoning was employed in *National American Insurance Co. v. Ruppert Landscaping Co.*, in which the court found that where the trustee's intent to abandon a claim was clearly shown, or where he could no longer exercise his powers under state law (i.e., where he is barred by federal law or has waived the claim), the creditor was free to pursue claims under state law. 122 F. Supp. 2d 670, 673–74 (E.D. Va. 2000). The court in that case also found that the trustee was bound by the statute of limitations in 11 U.S.C. § 546(a),[5] even where the statute of limitations on a fraudulent transfer claim would not have run under state law. *Id.* at 674–75.

---

[4] This is also in line with the generally accepted principle that a creditor or the creditor's committee may seek leave of the bankruptcy court to pursue an avoidance action where the trustee makes an unjustified refusal to exercise his avoidance powers. *See* 5 COLLIER, *supra*, ¶ 548.06.

[5] The version of 546(a) in effect at the time of McClung's bankruptcy filing reads as follows:

(a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of--

(1) the later of--

(A) 2 years after the entry of the order for relief; or

In this case, the parties do not dispute that the trustee would have been barred from pursuing the claim under 11 U.S.C. § 546(a)(1), which required the trustee to pursue an avoidance action within the later of one year after his appointment or two years after the entry of the order of relief. 11 U.S.C. § 546(a) (2000). The order of relief is simply the filing of the bankruptcy petition. *Id.* § 301 (2000). Further, 11 U.S.C. § 546(a)(2) goes on to state that an avoidance action must brought before the bankruptcy case has closed. *Id.* § 546(a)(2). However, 11 U.S.C. § 546(a), when read as a whole requires the claim to brought within the earlier of the times under subsections (1) and (2).

Consequently, in this case, because the trustee was appointed one day after the petition was filed, on April 17, 2003, and reappointed on October 17, 2003, when the case was converted to a chapter 7, the latest possible date that the trustee could have brought an action under 11 U.S.C. § 546(a) was October 17, 2005. This is true even assuming that either the conversion of the case or reappointment of the trustee restarted the clock under 11 U.S.C. § 546(a)(1) because it is the later of the two dates in subsection (1), but earlier than the date the bankruptcy estate was terminated, which was May 10, 2007. Consequently, the trustee's claim was barred, at latest, on October 17, 2005, under 11 U.S.C. § 546(a).

Mason incorrectly argues that the determinative date is May 10, 2007, resulting from a misreading of 11 U.S.C. § 546(a). As discussed above, the relevant inquiry in determining whether a creditor may bring a state law cause of action is whether the action is still vested in the trustee or whether the trustee has affirmatively abandoned the claim. Despite the focus of many of the circuit court cases on when the bankruptcy estate was terminated, that inquiry is inappropriate in this case. Under *Ruppert*, a creditor is entitled to bring a state law action after the trustee is barred from doing so or has abandoned the claim, which, in this case, was on

---

    **(B)** 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or

   **(2)** the time the case is closed or dismissed.

11 U.S.C. § 546(a) (2000).

October 17, 2005, at the latest. Thus, because the Christians did not bring their action until July 20, 2006, they were not precluded from doing so by federal law because the trustee was no longer entitled to bring the action by operation of 11 U.S.C. § 546(a), even though the bankruptcy case was still open.

## D.

Mason is not entitled to attorney's fees on appeal. Idaho Appellate Rules 35(b)(5) and 41 require that attorney's fees be specifically requested and discussed in the first brief submitted by a party to this Court. Idaho App. R. 35(b)(5), 41. Mason does not cite a statute to support his request for fees; instead, he cites to a case, *Nelson v. Nelson*. 144 Idaho 710, 718, 170 P.3d 375, 383 (2007). The only basis for attorney's fees discussed in *Nelson* is Idaho Code section 12-121, which allows for fees to be assessed where this Court determines that an appeal is frivolous, without reasonable grounds or basis in law, or where the law is well-settled and no showing is made that the district court misapplied the law. *Id.* Because this case presents an issue of first impression and the Christians prevailed on appeal, Mason is not entitled to attorney's fees on appeal.

## III.

Because the Christians have standing to bring their action under the UFTA, the district court order of dismissal is vacated and the case is remanded to the district court for further proceedings consistent with this opinion.

Chief Justice EISMANN, and Justices BURDICK, W. JONES and HORTON CONCUR.

11