## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 49126

IDAHO POWER COMPANY, an Idaho
corporation; and AVISTA CORPORATION,
a Washington corporation,

    Plaintiffs-Respondents-
    Cross Appellants,

v.

IDAHO STATE TAX COMMISSION, in its
capacity as the STATE BOARD OF
EQUALIZATION,

    Defendant-Appellant-
    Cross Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, January 2023 Term

Opinion Filed: May 17, 2023

Melanie Gagnepain, Clerk

_____

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Patrick Miller, District Judge.

The decision of the district court is <u>affirmed in part</u> and <u>vacated in part</u>.

Raúl R. Labrador, Idaho Attorney General, Boise, for Appellant/Cross Respondent, Idaho State Tax Commission. Phil N. Skinner argued.

Hawley Troxell Ennis & Hawley LLP, Boise, for Respondents/Cross Appellants, Idaho Power and Avista Corporation. Richard G. Smith argued.

_____

STEGNER, Justice.

This appeal concerns the taxation of operating property within Idaho. The Idaho State Tax Commission (the "Commission"), in its capacity as the State Board of Equalization, is responsible for equalizing the assessments of operating property for tax purposes. Idaho Power Company and Avista Corporation (collectively the "Companies") contested the Commission's assessments of their operating property during 2019 and 2020, asserting that those assessments violated the proportionality and uniformity requirements set out in Article VII, sections 2 and 5 of the Idaho Constitution. The Commission rejected the Companies' challenges and upheld its assessments.

The Companies then sought judicial review of the Commission's decision in district court, arguing that the Commission had erred in two significant ways. First, the Companies argued that,

1

because the Commission had reduced the assessed values of certain railroads' operating property in compliance with federal law, the assessed values of the Companies' operating property were unconstitutionally assessed at a higher percentage of their actual cash value than were the railroads' operating properties. Second, the Companies argued that commercial property had been assessed (and therefore taxed) at a lower percentage of its actual cash value than the Companies' operating property, rendering the Companies' operating property unconstitutionally disproportionally over-taxed. The district court granted summary judgment to the Commission as to the Companies' first argument. However, the district court concluded genuine issues of material fact existed as to the Companies' second argument and declined to grant the Commission's request for summary judgment. Both parties appealed. For the reasons discussed below, we affirm in part and reverse in part the decision of the district court.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Idaho Power Company, Avista Electric Company, and Avista Gas Company each own property in Idaho that is classified as "operating property." "Operating property" is statutorily defined as

> real and personal property operated in connection with any public utility, railroad or private railcar fleet, wholly or partly within this state, and which property is necessary to the maintenance and operation of the public utility, railroad or private railcar fleet, and the roads or lines thereof, and includes all rights-of-way accompanied by title; roadbeds; tracks; pipelines; bargelines; equipment and docks; terminals; rolling stock; equipment; power stations; power sites; lands; reservoirs, generating plants, transmission lines, distribution lines and substations; and all title and interest in such property, as owner, lessee or otherwise. The term includes electrical generation plants under construction, whether or not owned by or operated in connection with any public utility.

I.C. § 63-201(16). Like most real property in Idaho, operating property is subject to property taxes. Operating property is unique in that it is rarely, if ever, available on the open market, making it challenging to assess its fair market value. Thus, unlike real and personal property tax assessments, which are performed locally by county assessors, operating property tax assessments are performed by the Idaho State Tax Commission on a statewide basis.

The Companies challenged their 2019 and 2020 operating property value assessments before the Idaho State Tax Commission in its capacity as the State Board of Equalization, which is responsible for equalizing the assessments of operating property for tax purposes. The Companies argued that they were being overtaxed in relation to the operating property of other

2

companies, particularly railroads, which are similarly categorized. The Commission denied the Companies' requests for adjustments to the assessed value of the operating property at issue.

The Companies then filed a complaint in district court, invoking the district court's jurisdiction pursuant to Idaho Code section 63-409. The Companies asserted that the Commission, acting in its capacity as the State Board of Equalization, failed to equalize the Companies' operating property as required by the Idaho Constitution. The Companies made two arguments as to why the Commission's action failed to pass constitutional muster. First, the Companies argued that their operating property had been assessed in a disproportionate and non-uniform way because, in order to comply with the federal Railroad Revitalization and Reform Act of 1976 (also known as the "4-R Act"), the Commission had made downward adjustments to the market value of operating property owned by several railroads but had not made any similar downward adjustments to the Companies' operating property. (This is referred to as the "4-R claim.") Second, the Companies argued that, alternatively, they were entitled to an adjustment "based on the lower ratios of assessed values to market value for other commercial property." (This is referred to as the "alternative claim.")

Asserting that the Companies had failed to state a claim on which relief could be granted, the Commission moved for judgment on the pleadings on the 4-R claim. In turn, the Companies moved for summary judgment on the 4-R claim. Next, the Commission moved for summary judgment on the alternative claim. Concluding that the Companies had no legal basis to succeed on their 4-R claim, the district court granted the Commission's motion for judgment on the pleadings on that claim. However, the district court denied the Commission's motion for summary judgment on the alternative claim, concluding that there were genuine issues of material fact that had to be resolved at trial. Both parties moved for reconsideration; however, there are no rulings on the motions for reconsideration contained in the record.

The Commission moved for permission to appeal the district court's decision denying summary judgment in the Commission's favor on the alternative claim.[1] Noting that the Companies agreed that a permissive appeal was appropriate, the district court granted the

---

[1] Denials of motions for summary judgment are not, as a general rule, appealable. However, pursuant to Idaho Appellate Rule 12, a party may request permission to appeal a denial of a motion for summary judgment in exceptional circumstances: If the appeal "involves a controlling question of law as to which there is substantial grounds for difference of opinion" and an immediate appeal "may materially advance the orderly resolution of the litigation." In order to bring such an appeal, a party must first file a motion with the district court and the Idaho Supreme Court. I.A.R. 12(b), (c)(1). This Court must accept the appeal in order for a permissive appeal to proceed. I.A.R. 12(d).

uncommon request. Although this Court does not usually entertain appeals regarding the denial of a motion for summary judgment, this Court agreed and granted the Commission's request for a permissive appeal on the alternative claim. Additionally, the district court certified that there was no just reason for delay and entered an appealable judgment pursuant to Idaho Rule of Civil Procedure 54(b) regarding the 4-R claim. Subsequently, the Commission timely appealed and the Companies timely cross-appealed.

## II.    STANDARD OF REVIEW

"Any taxpayer or county assessor who is aggrieved by a state tax commission decision assessing a taxpayer's operating property may file an appeal to the district court of Ada county[.]" I.C. § 63-409(1). "The appeal may be based upon any issue presented by the taxpayer to the state tax commission and shall be heard by the district court in a trial de novo without a jury in the same manner as though it were an original proceeding in that court." *Id.* In seeking relief before the district court, "[t]he burden of proof shall fall upon the party seeking affirmative relief and the burden of going forward with the evidence shall shift as in other civil litigation." I.C. § 63-409(2). "A preponderance of the evidence shall suffice to sustain the burden of proof." *Id.* "Any final order of the district court under [Idaho Code section 63-409] shall be subject to appeal to the Idaho supreme court in the manner provided by the Idaho appellate rules." I.C. § 63-409(1).

This Court freely reviews lower court decisions on both motions for judgment on the pleadings and motions for summary judgment. *Union Bank, N.A. v. JV L.L.C.*, 163 Idaho 306, 311–12, 416 P.3d 407, 412–13 (2017); *Union Pac. Land Res. Corp. v. Shoshone Cnty. Assessor*, 140 Idaho 528, 531, 96 P.3d 629, 632 (2004). The standards of review for both types of motions are identical: like judgment on the pleadings,

> "[s]ummary judgment is appropriate if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Lockheed Martin Corp. v. Idaho State Tax Comm'n*, 142 Idaho 790, 793, 134 P.3d 641, 644 (2006). Furthermore, "[a]ll doubts are to be resolved against the moving party, and the motion must be denied if the evidence is such that conflicting inferences may be drawn therefrom, and if reasonable people might reach different conclusions." *G & M Farms v. Funk Irr. Co.*, 119 Idaho 514, 516–17, 808 P.2d 851, 853–54 (1991).

*Union Bank, N.A. v. JV L.L.C.*, 163 Idaho 306, 311–12, 416 P.3d 407, 412–13 (2017) (first alteration added; second alteration in original).

4

## III.   ANALYSIS

**A.  The district court erred in dismissing the Companies' 4-R claim.**

The district court granted the Commission's motion for judgment on the pleadings regarding the Companies' 4-R claim. The district court concluded that, as a matter of law, the Companies were not entitled to relief on their 4-R claim. The district court stated that it was "required to interpret any federal intervention into an area otherwise thoroughly regulated by the states (i.e., taxation of real and personal property) in a manner which minimally interferes with the state's operation of that area." Following this interpretation, the district court concluded that "the federal government has preempted a state tax commission's equalization function as applied to railroads." The district court explained:

> When performing its equalization function, a state may not adjust up or down the value assigned to railroad property based on state constitutional, statutory or regulatory standards. Likewise, the equalization standards contained in the federal law cannot be used to interfere with the state's performance of its equalization function as required by state law as to any property not preempted. To do so would in effect require a finding Congress intended to occupy the field of taxation of real property by the states. On the record presented, this [c]ourt cannot make such a finding.

Accordingly, the district court concluded that the Commission was entitled to a judgment as a matter of law and dismissed the Companies' 4-R claim.

On appeal, the Companies argue that the district court erred when it granted the Commission's request for judgment on the pleadings as to the 4-R claim. The Companies acknowledge that the Commission must comply with the 4-R Act when assessing railroad property values, but they assert that such compliance can be achieved while also following the mandate of the Idaho Constitution that taxes for similar operating properties be uniform. Essentially, the Companies argue that the 4-R Act "does not limit[] the Tax Commission's ability to protect uniformity in assessments" and, therefore, it "does not affect Idaho's uniformity requirement."

The Commission responds that "it is unquestionable that Congress clearly preempted the states from taking the actions that Congress wrote 'a State may not do' which are laid forth in the text of the [4-R Act]." The Commission asserts that "[t]he 4-R Act clearly intends only to remove rail transportation properties from the uniformity equation—not to disrupt the states [sic] property tax system entirely." Allowing the Companies to be affected by the 4-R Act in the way they seek, the Commission contends, "would shift property tax burden onto residential and other property types. That is a policy decision the legislature has not chosen to make." The Commission suggests

that the 4-R Act's favorable treatment of railroad property should be viewed as an exception to the uniformity requirement, similar to property tax exemptions.

We hold that the district court erred in dismissing the Companies' 4-R claim. In general, "[a]ll property within the jurisdiction of this state, not expressly exempted, is subject to appraisal, assessment and property taxation." I.C. § 6-203. As explained by the district court, "property taxes must be both proportiona[l] and uniform." Article VII, section 2 of the Idaho Constitution states that "[t]he legislature shall provide such revenue as may be needful, by levying a tax by valuation, so that every person or corporation shall pay a tax in proportion to the value of his, her, or its property[.]" Pursuant to Article VII, section 5 of the Idaho Constitution, "[a]ll taxes shall be uniform upon the same class of subjects[.]"

There are three property classifications in Idaho, as specified by statute: real property, personal property, and operating property. I.C. § 63-204. The parties do not dispute that the property at issue here is operating property. State taxation of rail transportation property—which is classified as operating property pursuant to Idaho Code section 63-201(16)—is subject to the federal 4-R Act. The 4-R Act provides in relevant part:

 (b) The following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:

(1) Assess rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property.

. . .

(c) . . . Relief may be granted under this subsection only if the ratio of assessed value to true market value of rail transportation property exceeds by at least 5 percent the ratio of assessed value to true market value of other commercial and industrial property in the same assessment jurisdiction. The burden of proof in determining assessed value and true market value is governed by State law. If the ratio of the assessed value of other commercial and industrial property in the assessment jurisdiction to the true market value of all other commercial and industrial property cannot be determined to the satisfaction of the district court through the random-sampling method known as a sales assessment ratio study (to be carried out under statistical principles applicable to such a study), the court shall find, as a violation of this section—

(1) an assessment of the rail transportation property at a value that has a higher ratio to the true market value of the rail transportation

6

property than the assessed value of all other property subject to a property tax levy in the assessment jurisdiction has to the true market value of all other commercial and industrial property; and

(2) the collection of an ad valorem property tax on the rail transportation property at a tax rate that exceeds the tax ratio rate applicable to taxable property in the taxing district.

49 U.S.C. § 11501.

The question before this Court is whether the Idaho Constitution's requirement for uniformity in taxation conflicts with and, therefore, is preempted by the 4-R Act. Obviously, the 4-R Act preempts Idaho from taxing railroad property in a way that would contradict the 4-R Act. However, the broader question presented by this case is whether the federal act also preempts the Commission from following Idaho's constitutional requirement to tax the Companies uniformly compared to the railroads. We conclude no such broad preemption exists.

"The preemption of state law is not to be readily inferred." *Christian v. Mason*, 148 Idaho 149, 152, 219 P.3d 473, 476 (2009) (quoting *Matter of Estate of Mundell*, 124 Idaho 152, 153, 857 P.2d 631, 632 (1993)). "Federal law may preempt state law in one of two ways." *Id.* "First, if Congress has shown the intent to occupy a given field, any state incursion into that field is preempted by federal law." *Id.* "Second, even if the field is not preempted, if state law conflicts with federal law, it is preempted to the extent of the conflict." *Id.* "In order to find that a state law has been preempted, this Court must determine that the law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (quoting *Mundell*, 124 Idaho at 153, 857 P.2d at 632). "Essentially, this Court must find that a state law is directly contrary to the congressional intent behind a federal statute before state law will be preempted." *Id.*

As noted by the Companies, both the 4-R Act and the Idaho Constitution prohibit discrimination and non-uniformity in property taxation. The Ninth Circuit Court of Appeals has recently explained that "Congress passed the 4-R Act out of concern for the financial stability of the nation's railway system." *BNSF Railway Co. v. Cnty. of Alameda*, 7 F.4th 874, 879 (9th Cir. 2021). "Recognizing that 'railroads are easy prey for State and local tax assessors in that they are nonvoting, often nonresident, targets for local taxation, who cannot easily remove themselves from the locality,' Congress instituted 'a prohibition on discriminatory state taxation of railroad property[.]'" *Id.* (quoting *Dep't of Revenue of Or. v. ACF Indus., Inc.*, 510 U.S. 332, 336 (1994), then *Burlington N. R.R. Co. v. Okla. Tax Comm'n*, 481 U.S. 454, 457 (1987)).

The Idaho Constitution likewise prohibits discriminatory taxation of property. IDAHO CONST. art. VII, § 5 ("All taxes shall be uniform upon the same class of subjects[.]"). Unlike the 4-R Act, the provisions of the Idaho Constitution that address property taxes are not limited to railroad property, nor does Idaho's Constitution specify a valuation method. However, because the Idaho Constitution is written broadly, it does not directly contradict the 4-R Act. While the 4-R Act is more specific, both the Act and the Idaho Constitution share the same purpose: to prohibit discriminatory taxation. Additionally, compliance with the 4-R Act and the Idaho Constitution may be achieved simultaneously; the two are not mutually exclusive. Thus, the Idaho Constitution does not contradict the 4-R Act either in purpose or in practice. As such, the 4-R Act does not preempt the constitutional uniformity requirement.

The Commission seeks to avoid this conclusion by asserting that such an outcome would harm residential taxpayers. However, these policy concerns are the province of the legislature, not this Court. Furthermore, although the Commission urges this Court to view the 4-R Act's effect on railroads as an exemption, nothing precludes the legislature from enacting such an exemption outright if it so chooses—or from creating an exemption for residential taxpayers. *See, e.g.*, I.C. § 63-602 (identifying property that is exempt from taxation). The Commission's focus on the legislature's inaction cannot override the plain language of Idaho's Constitution. We decline the Commission's invitation to infer legislative approval of its taxing railroads differently than it taxes the Companies. The Idaho Constitution specifically belies the Commission's argument that legislative inaction in this area can somehow trump Idaho's Constitution.

In sum, we hold that, because the 4-R Act is not contrary to the Idaho Constitution, the 4-R Act does not preempt the state constitutional uniformity requirement. Accordingly, the district court erred in dismissing the Companies' 4-R claim.

**B. The district court did not err in declining to grant summary judgment to the Commission as to the alternative claim.**

Next, the district court denied the Commission's motion for summary judgment regarding the Companies' alternative claim. The district court concluded that, as a matter of law, the Companies "have a right to require the Tax Commission to equalize their property to other comparable property in the state." The district court further concluded that "[q]uestions of fact . . . appear to exist whether the Tax Commission has fulfilled its obligation to equalize [the Companies'] centrally assessed [operating] property to other relevant property." The district court explained:

8

The question here is whether differences in assessment ratios that are not specifically assigned, but are known to exist, exist over a longer period of time and are allowed to continue, constitute constitutionally infirm "systematic" difference. In the [c]ourt's judgment this presents questions of degree and knowledge. And, in this case, those questions are questions of fact.

The district court also noted that, although the Commission asserted it had complied with Property Tax Administrative Rule 131, which is used by the Commission to equalize "locally assessed property from county to county across the state[,]" Rule 131 "does not have direct application to equalizing centrally assessed [operating] properties." The district court concluded that a question of fact existed as to whether Rule 131 provides "indirect protection" against unconstitutional discrimination in taxation.

On appeal, the Commission argues that the district court erred in declining to grant its motion for summary judgment as to the Companies' alternative claim. The Commission argues that the Companies failed to point to any evidence showing intentional systematic discrimination. Further, the Commission asserts that the evidence in the record shows that any deviation in assessment value was an allowable deviation under Rule 131, which "is a bright line test to determine whether categories of assessed property are being systematically over assessed or under assessed." The Commission argues that, "[w]hen categories of assessed property satisfy the requirements of Rule 131, by rule, these categories of property have been uniformly assessed and there has been no systematically discriminatory result." Pointing to Idaho Code section 63-109(2) and *J.R. Simplot Co. v. Idaho State Tax Commission*, 120 Idaho 849, 820 P.2d 1206 (1991), the Commission argues that Rule 131 is entitled to administrative deference. Should the district court's decision stand, the Commission urges, Rule 131 would be invalidated and need to be rewritten.

The Companies respond that giving Rule 131 the deference the Commission suggests would result in centrally assessed taxpayers having no remedy for equalization errors. Further, the Companies contend the Commission's deference analysis under *Simplot* is incorrect. Next, the Companies assert that there are genuine issues of material fact as to whether they are entitled to relief. Specifically, the Companies argue that the assessment of their operating properties was erroneous based on systematic differences in valuation, which is further impacted by the choice of valuation system.

1. *Rule 131 has no application to this dispute.*

We first conclude that Rule 131 is not applicable here. As explained by the district court:

9

Rule 131 describes a method for performing a "ratio study" and using the result of that study to determine if equalization is required. The target of the equalization review, however, is locally assessed property from county to county across the state. The goal is to assure equalization amongst local taxing jurisdictions. *Rule 131 does not have direct application to equalizing centrally assessed [operating] properties.*

A ratio study as described in Rule 131 collects a sample of actual sales of property near the study date. The actual sale prices in the sample are then compared to the assessed value of the specific properties in the sample. The ratio of the assessed value to the sale value is the "assessment ratio." The subjects in the study are then assigned to one of five categories: vacant residential, improved residential, vacant commercial, improved commercial and manufactured housing. The Tax Commission then creates an array of these ratios, by category, from smallest to largest, and selects the mid-point in array. This is the "median." The median is the number where one half of the numbers in the sample are above and one half below. This median (subject to adjustment that might be needed to obtain an appropriate "confidence interval") is then compared to the assessment ratios of properties by categories across taxing jurisdictions. If the assessment ratios in a particular taxing jurisdiction for a specific category of property [are] less than 90% of the calculated median from the ratio study, the Tax Commission, sitting as the State Board of Equalization, requires that taxing jurisdiction to increase the assessments of the affected property category in that particular jurisdiction.

(Italics added.) As correctly noted by the district court, Rule 131 is intended to equalize property taxes between counties when those properties have been *locally* assessed by county assessors. Rule 131 has no application to operating property that is *centrally* assessed. Additionally, the Commission has not pointed this Court to any rule that applies to centrally assessed operating properties. Because Rule 131 has no application to the operating property at issue in this case, we need not determine whether it is entitled to deference. We only defer to an agency when a rule it has promulgated applies to the facts of a given case.

2. *Genuine issues of material fact exist, which preclude summary judgment.*

We next conclude that genuine issues of material fact exist as to whether the Companies are entitled to relief on their alternative claim. Notably, in its opening brief, the Commission does not engage with the facts the Companies put forth below; instead, the Commission argues no genuine issues of material fact exist because it complied with Rule 131. However, as discussed above, Rule 131 has no application to this case. As such, the Commission's argument that simply complying with Rule 131 demonstrates constitutional compliance is inapposite. Additionally, although the Commission contends that compliance with Rule 131 "keeps values within an acceptable range[,]" it is the acceptability of this range that is at issue. Because Rule 131 has no

applicability to centrally assessed operating property, the Commission's reliance on it to support its determination of which range of error is acceptable with respect to the constitutional uniformity requirement is incorrect. As such, genuine issues of material fact exist as to whether the valuation assessments of the Companies' operating properties were erroneous, leading to unconstitutional non-uniformity in taxation relative to other commercial property.

In sum, we hold that the district court did not err in declining to grant summary judgment to the Commission as to the alternative claim.

### C. On remand, the standard is whether the Companies can show that, by a preponderance of the evidence, the Commission erred in failing to equalize the assessments of the Companies' operating property.

We take this opportunity to clarify the standard for reviewing the Companies' non-uniformity claims, because that determination will assist the district court upon remand. *See Clark v. Klein*, 137 Idaho 154, 45 P.3d 810 (2002) ("[W]here an appellate court reverses or vacates a judgment upon an issue properly raised, and remands for further proceedings, it may give guidance for other issues on remand.") (quoting *Urratia v. Blaine Cnty.*, 134 Idaho 353, 359, 2 P.3d 738, 744 (2000)). As we have previously explained, "[w]here discrimination has occurred, this Court has held that the aggrieved taxpayer is entitled to relief where the valuation fixed by the assessor is manifestly excessive, fraudulent or oppressive, or arbitrary, capricious and systematically discriminatory." *Ada Cnty. v. Red Steer Drive-Ins of Nev., Inc.*, 101 Idaho 94, 98, 609 P.2d 161, 165 (1980). The Commission contends this is the standard that should be applied to the Companies' claims. However, in 2003, the legislature enacted Idaho Code section 63-409(2), which provides in relevant part:

> In any appeal taken pursuant to this section, the burden of proof shall fall upon the party seeking affirmative relief to establish that the valuation from which the appeal is taken is erroneous, or that the state tax commission erred in its decision regarding a claim that certain property is exempt from taxation, the value thereof, or any other relief sought before the state tax commission. *A preponderance of the evidence shall suffice to sustain the burden of proof.*

(Italics added.) Thus, section 63-409(2) statutorily replaced the heightened standard urged by the Commission. On remand, the district court should determine whether, based on a preponderance of the evidence, the Companies have proven that the Commission erred in failing to equalize the Companies' assessments.

## IV.    CONCLUSION

For the foregoing reasons, we reverse the district court's dismissal of the Companies' 4-R claim and affirm the district court's denial of summary judgment as to the Companies' alternative claim. Pursuant to Idaho Appellate Rule 40, the Companies are awarded costs on appeal. The case is remanded for further proceedings in accordance with this opinion.

Chief Justice BEVAN, Justices BRODY, MOELLER and ZAHN CONCUR.